Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOs. PD-0453-07, PD-0454-07, PD-0455-07, PD-0456-07, PD-0457-07, 


PD-0458-07, PD-0459-07, PD-0460-07






TERRY M. HOLMES, DAVID WOODALL, GABRIEL J. WILLIAMS, GABRIEL
CONTRERAS, JR., APRIL HARLOW, ALFONSO R. RODRIGUEZ, MICHAEL
BRICE, WALTER WIDNER, JR., Appellants




v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


HARRISON COUNTY






 MEYERS, J., joined by Keller, P.J, and Keasler and Hervey, J.J.


DISSENT TO DENIAL OF STATE'S SECOND MOTION FOR REHEARING




 I authored the opinion on the State's first motion for rehearing. I now believe that
opinion, as well as the Court's opinion on original submission should be withdrawn
because neither opinion addressed the issue raised all along by the State in its petition for
discretionary review and its rehearing motions--whether these cases were cognizable for a
review by the court of appeals (1)--and both opinions fail to address the State's repeated
claim that this case is like McGlynn v. State, 704 S.W.2d 18 (Tex. Crim. App.
1982)(opinion on reh'g).

 A blueprint for addressing the cognizability question was laid out by this Court in 

Gonzales v. State, 966 S.W.2d 521 (Tex. Crim. App. 1998). The test set out in Gonzales
is based upon the two cases relied upon by the parties before us now: McGlynn and Kraft
v. State, 762 S.W.2d 612 (Tex. Crim. App. 1988). The State has contended all along that
this case is like McGlynn; appellant has argued that this case is like Kraft. Before
discussing Gonzales, therefore, it makes sense to first discuss McGlynn and Kraft.

 Both cases involved a defendant's appeal, in a negotiated plea case, from the trial
court's denial of a pretrial motion to suppress evidence. McGlynn involved an alleged
Fourth Amendment violation, while Kraft concerned an alleged Fifth Amendment
violation. In McGlynn, the defendant was arrested for aggravated assault and later
charged with possession of a controlled substance, methylphenidate. 704 S.W.2d at 19. 
She filed a pretrial motion to suppress evidence of "a quantity of a substance alleged to be
methylphenidate" which was seized from her purse incident to her arrest. At the hearing
on the motion, the arresting officer conceded that he could not tell whether the pills he
seized were controlled substances. The trial court denied the motion, and the defendant
pled guilty. The issue before this Court was "what must the record show about the
'evidence' the trial court found was admissible, but which was not actually admitted, in
order for an appellate court to exercise its jurisdiction" to address the validity of the
search and seizure. (2) Id. at 19-20. While the officer suspected that the pills were
contraband, there were multiple kinds of pills and he had "no idea" what kind he was
looking at when he seized the bottle. This record simply did "not show that anything the
officer seized was methylphenidate, much more that it was the same methylphenidate, to
which [the defendant] pleaded guilty of possessing." The Court noted that without some
demonstration in the record as to the substance seized, the issue became an academic
exercise in determining whether the seizure was violative of either constitution. Under
the Exclusionary Rule, however, "'the issue is not the abstract propriety of the police
conduct, but the admissibility against [the defendant] of the evidence uncovered by the
search and seizure.'" Id. (quoting Terry v. Ohio, 392 U.S. 1 (1968)). Thus, the Court held
that "unless and until we are confident about what fruits of a search have somehow been
used, the Court need not decide whether the search was constitutionally permissible." Id.
at 21.

 In Kraft, the defendant pled nolo contendere to misdemeanor DWI and appealed
the trial court's denial of his pretrial motion to suppress the audio portion of his DWI
videotape, in which he was interrogated without counsel. 762 S.W.2d at 613. Relying on
McGlynn, the State contended that the tape was essentially exculpatory and therefore it
would not have sought to "use" that evidence against the defendant in any event. This
Court agreed at the outset that the principles in McGlynn would rationally apply in the
context of a motion to suppress based on alleged Fifth Amendment violations. The Court
noted that, unlike McGlynn, the record in Kraft revealed the "fruits" that were allegedly
"used" against the defendant. The videotape was admitted into the record. Thus, the
issue presented in Kraft was one that was never reached in McGlynn: whether the fruits
had "somehow been used." Id. at 614. Although the tape was not inculpatory because it
did not establish intoxication, the Court nonetheless held it had been "used" by the State
as leverage in the plea bargain. (3) Thus, the Court held the "fruits" at issue in Kraft were
indeed "somehow . . . used" against the defendant.

 The principles from McGlynn and Kraft were fashioned into a two-step inquiry 

by the Court in Gonzales v. State, 966 S.W.2d 521 (Tex. Crim. App. 1998). Gonzales
was charged with DWI and pled no contest after his pretrial motions to suppress
evidence, which included his blood test results, were denied. This Court granted review
to decide whether the Court of Appeals erred in holding that it need not address whether a
blood test was taken in violation of Gonzales's rights because the results of the test were
never admitted into evidence. The Court established a two-step inquiry which "appellate
courts must use . . . when deciding whether to address the merits of a claim regarding the
trial court's denial of a pretrial motion to suppress evidence prior to a guilty plea": (4)

 First, the appellate court must identify "the fruits" that the trial court held
would not be suppressed. McGlynn, 704 S.W.2d at 21. Second, the
appellate court must determine that these fruits have "somehow been used"
by the State. Kraft, 762 S.W.2d at 613-14. If it is not clear from the
testimony and exhibits what "the fruits" are, then the appellate court need
not address the merits of the claim. Likewise, if the fruits have not
"somehow been used" by the State, then the appellate court need not
address the merits of the claim.


Id. at 524. (5)

 Gonzales, Kraft and McGlynn, all involved appeals from a ruling on a pretrial
motion to suppress evidence. This case involves appeals from rulings on pretrial motions
to cross-examine a State's witness. The critical similarity is that they all involve a ruling
on a pretrial motion which was appealed under Rule 25.2(a)(2), or a former version of
that Rule. I see no reason why the same cognizability standard which applies to a plea-bargaining defendant who appeals a ruling on a pretrial motion to suppress, would not
apply to a plea-bargaining defendant who appeals a ruling on a pretrial motion to cross-examine a witness. I believe Gonzales applies here.

 Before applying Gonzales to this case, a brief review of the facts is in order. This
case is a consolidation of eight DWI cases in which the State alleged both theories of
intoxication (per se and loss of faculties) in each case. In seven of the cases (the "seven
companion cases"), the defendants pled guilty immediately after denial of their pretrial
motions to cross-examine the State's expert regarding the science underlying the
Intoxilyzer 5000. Woodall's case went to trial and State Trooper Redden testified about
the operation of the intoxilyzer. However, Woodall's intoxilyzer results were not
admitted into evidence because his objection to them was sustained. Redden was not
allowed to testify to appellant's results. Woodall pled guilty after Redden testified. 

 Analyzing the State's claim under Gonzales, the first task is to identify the "fruits." 
In the case of a motion to suppress evidence, the "fruit" is generally physical evidence
(e.g., drugs, a weapon, stolen property) or at least clearly identifiable evidence (e.g., a
written statement) that the defendant wanted suppressed. It bears repeating here that the
instant cases did not involve typical motions to suppress with clearly identifiable
evidence. These cases did not involve motions to suppress at all. Rather, these cases
concerned pretrial motions to allow cross-examination of a State's witness during trial.

The character of testimony, and especially proposed cross-examination, is more elusive
than physical evidence because its nature depends in large part upon its context and the
manner in which the trial might unfold. The Supreme Court has commented on the
difficulties associated with assessing a pretrial ruling related to testimony or evidence that
has not been presented in the context of a trial that has played out. In Luce v. United
States, 469 U.S. 38 (1984), the Supreme Court held that a trial court's overruling of a
motion in limine which sought to preclude the government from using a prior conviction
to impeach the defendant if he testified, was not reviewable unless the defendant testifies
because it was too fraught with speculation. Indeed, the Court noted that in order to
assess the trial court's ruling, the reviewing court would have had to speculate about the
precise nature of the defendant's testimony, whether the trial court's ruling would have
remained the same or would have changed as the case unfolded, whether the government
would have sought to impeach the defendant with the prior conviction, whether the
accused would have testified in any event, and whether any resulting error in permitting
impeachment would have been harmless. Id. at 41-42; see also Jackson v. State, 992
S.W.2d 469, 479 (Tex. Crim. App. 1999)(discussing Luce).

 No less speculation would have to occur here in order for a reviewing court to
attempt to assess the trial court's ruling regarding the proposed cross-examination. In the
seven companion cases, the general content of the proposed cross-examination was
outlined by all seven appellants in their written motions to cross-examine, as pertaining to
eight "areas of concern about the internal working of the Intoxilyzer 5000." In order to
give context or relevance to this proposed line of questioning, however, the reviewing
court would have to assume that the State would have decided to call an expert, that the
expert would have testified to the appellants' breath test results, that such testimony
would have been held admissible, and that the appellants' breath test results would in fact
have been incriminating. (6) And none of this speculation even approaches whether any
impeachment of the expert might have been harmless. The reviewing court has no way of
knowing how the expert would have responded to the cross-examination. In Woodall's
case, while we don't know the precise content of the proposed cross-examination, we
know more about its context and relevance in relation to the case because the State did
call its expert, Dennis Redden, to testify, and he did testify about the Intoxilyzer 5000. 
However, Redden did not testify to Woodall's breath test results; therefore, we can
actually conclude that any cross-examination regarding the Intoxilyzer 5000 would have
been irrelevant, at least at that point, given that Woodall's breath test results were not
admitted. It's possible the State would have focused on a theory of intoxication by loss of
faculties if the trial had continued. (7) Indeed, it's possible that the evidence was strong
enough in any of the eight cases for the State to choose to proceed on a theory of
intoxication by loss of faculties. We simply don't know.

 On this record, the precise nature of the barred cross-examination in the context of
these cases is unknown. See Gonzales; cf. Luce, 469 U.S. at 41. Because "it is not clear
from the testimony and exhibits what 'the fruits' are," the court of appeals erred to
address the merits of appellants' claims. See Gonzales; McGlynn. Given that the "fruits"
cannot be identified, the question of whether those fruits have "somehow been used" by
the State is not reached. See McGlynn. I would hold the issue was not cognizable for
appeal. Id.

 Because I believe the Court's previous opinions have not adequately addressed the
State's claims, and that this would make a difference to the ultimate outcome in these
cases as demonstrated in this opinion, I dissent to the Court's denial of the rehearing
motion.


DELIVERED SEPTEMBER 15, 2010

PUBLISH
1. In its second opinion on rehearing, the Court did address whether "the trial court's ruling" was
"used" against appellants, but that discussion was part of a harm analysis conducted under 44.2(a); it was not
an analysis of cognizability.
2. Certainly, we have held that "a defendant is not required to have the evidence which he sought to
suppress admitted in order for the court of appeals to address the merits of an appeal challenging denial of a
pretrial motion to suppress." Gonzales, 966 S.W.2d at 524 (citing Kraft; McKenna). But there must be
something in the record on which the appellate court can make an assessment of the matter:


 [T]he appellate record will not contain a transcription of the notes of the court reporter
reflecting evidence adduced at trial-only a record of testimony and, perhaps, exhibits prior
elicited at the hearing on a pretrial motion to suppress, as in the case at bar. Accordingly, it
is the record of germane testimony and exhibits, if any, perfected for and brought forward on
appeal which will inform an appellate determination of the matter raised by written motion
prior to trial-even though that record had not been admitted in some fashion as evidence at
the guilty plea.


McGlynn, 704 S.W.2d.at 20 (emphasis in original).
3. The Court explained how the tape, although not inculpatory, was "used" in obtaining the appellant's
plea:


 In contesting appellant's motion to suppress and obtaining a ruling that the videotape was
admissible in its entirety, the State preserved the option to "use" appellant's statement as part
or all of its evidence going to establish the above elements in a full-blown trial. This ruling
undoubtedly contributed in some measure to the State's leverage in the plea bargaining
process; the more relevant evidence appellant knows could be marshalled against him, the
more preferable would appear his option to relinquish constitutional rights of trial and
confrontation in exchange for a favorable punishment recommendation. Thus, we may
presume that at least to some extent the State has "used" the contested evidence to obtain
appellant's plea.


Kraft, 762 S.W.2d at 614. The Court held that "so long as it may be concluded that particular evidence the
accused maintains should have been suppressed pursuant to a motion raising Fourth or Fifth Amendment
violations would in any measure inculpate the accused, that evidence has been 'used' against him in securing
his misdemeanor conviction, and hence, the appellate court should entertain the merits of his appeal." Id. at
615.
4. While this Court has not had another occasion to apply the test it established in Gonzales, it is
routinely applied by the courts of appeals. See, e.g., Miles v. State, 194 S.W.3d 523, 526 n.2 (Tex.
App.-Houston [1st Dist.] 2006), aff'd, 241 S.W3d 28 (Tex. Crim. App. 2007); Brennan v. State, 140 S.W.3d
779, 781 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd); Hughes v. State, 7 S.W.3d 880, 882-83 (Tex.
App.-Amarillo 1999).
5. The Court remanded to the court of appeals to address the two questions. On remand, the court of
appeals held that it could not identify from the record the "fruits" of the alleged unlawful search and seizure. 
Gonzales v. State, 977 S.W.2d 189, 191 (Tex. App.-Austin 1989, pet. ref'd). Although the testifying DPS
trooper stated that he took the defendant's blood specimen to the DPS lab, the record does not show that it was
analyzed or what the results were. Id. at 190. The defendant pointed to the State's allegations that he had an
alcohol concentration of "0.10 or more," but the court declined to consider allegations in a charging instrument
as evidence. Because it could not identify the "fruits," the court was unable to determine that the alleged
"fruits" had "somehow been used" by the State. Id. at 191.
6. Indeed, in holding that the accuracy and reliability of the intoxilyzer machine was a matter relevant
to an issue in the case (such that barring related cross-examination was a violation of the right to present a
defense), the court of appeals apparently made all of these critical presumptions, at least in the seven
companion cases - that appellants' breath test results were all admissible, that they were all incriminatory, and
that the State would have called an expert who would have testified to the test results. It would have been
necessary to make such presumptions because it is the admission of breath test results as incriminating
evidence that gives the intoxilyzer machine relevance to the case.
7. There was evidence to support such theory. Redden testified that he pulled Woodall's vehicle over
after observing it swerving and weaving, that he smelled alcohol on Woodall's breath, and that Woodall had
red, watery eyes. Redden further testified that he conducted field sobriety tests at the scene and again at the
jail, and Woodall performed poorly. The State also played videotapes of the sobriety tests for the jury.